No. 26-10794

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS,
PLAINTIFF–Appellee,

v.

UNITED STATES OF AMERICA, ET AL.,
DEFENDANTS–APPELLEES

v.

CITY OF BALTIMORE, MD; CITY OF COLUMBUS, OH; CITY OF NEW HAVEN, CT; AND CENTRO LEGAL DE LA RAZA
*Movants – Appellants*

On Appeal from the United States District Court
for the Northern District of Texas, Wichita Falls Division

## STATE OF TEXAS'S OPPOSITION TO APPELLANTS'MOTION FOR STAY PENDING APPEAL

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

*/s/ Kyle Tebo*
KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
LEGAL STRATEGY DIVISION
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Kyle.Tebo@oag.texas.gov

*Counsel for Texas*

## CERTIFICATE OF INTERESTED PERSONS

STATE OF TEXAS,
PLAINTIFF–Appellee,
v.
UNITED STATES OF AMERICA, TODD WALLACE BLANCHE.U.S. ATTORNEY GENERAL; AND SIRCE OWEN, ACTING DIRECTOR OF EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,
DEFENDANTS–APPELLEES
v.
CITY OF BALTIMORE, MD; CITY OF COLUMBUS, OH; CITY OF NEW HAVEN, CT; AND CENTRO LEGAL DE LA RAZA
*Movants – Apppellants*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellee, the State of Texas, as a governmental party, need not furnish a certificate of interested persons.

/s/ *Kyle S. Tebo*
KYLE S. TEBO
*Counsel for Appellee*

# Table of Contents

Page

Certificate of Interested Persons ..... i
Table of Contents ..... ii
Table of Authorities ..... iii
Introduction ..... 1
Background ..... 2
Argument ..... 4
I. A Stay of the District Court's Final Judgment Would Exceed this Court's Jurisdiction. ..... 4
A. The instant appeal is limited to the intervention ruling. ..... 4
B. Summary reversal is unavailable. ..... 6
II. The Nken Factors do not Support a Stay. ..... 7
A. Appellants are unlikely to succeed on the merits. ..... 8
1. Appellants lack standing to challenge the Consent Judgment. ..... 8
2. The district court's Consent Judgment resolved a live Article III controversy and did not evade the APA's rulemaking requirements. ..... 12
3. The statutory merits are at least substantially disputed. ..... 14
B. Appellants do not face irreparable harm. ..... 15
C. Texas would be harmed by a stay and the public interest favors finality. ..... 16
Conclusion ..... 19
Certificate of Compliance ..... 1

# Table of Authorities

**Cases**

*Arcos Sanchez v. Attorney General*,
997 F.3d 113 (3d Cir. 2021)........ 15
*Barber v. Bryant*,
833 F.3d 510 (5th Cir. 2016)........ 19
*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)........ 8, 10
*Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023)........ 11
*Clinton v. Goldsmith*,
526 U.S. 529 (1999)........ 5, 6
*Computer & Commc'ns Indus. Ass'n v. Paxton*,
184 F.4th 420 (5th Cir. 2026)........ 9
*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013)........ 15
*Data Marketing Partnership, LP v. U.S. Department of Labor*,
45 F.4th 846 (5th Cir. 2022)........ 14
*Department of Commerce v. New York,*
588 U.S. 752 (2019)........ 9
*Diamond v. Charles*,
476 U.S. 54 (1986)........ 8
*E.T. v. Paxton*,
19 F.4th 760 (5th Cir. 2021)........ 19
*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996)........ 1, 4
*El Paso County v. Trump*,
982 F.3d 332 (5th Cir. 2020)........ 10
*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)........ 11
*Freedom From Religion Found., Inc. v. Mack*,
4 F.4th 306 (5th Cir. 2021)........ 5
*Groendyke Transportation, Inc. v. Davis*,
406 F.2d 1158 (5th Cir. 1969)........ 1, 7
*Hernandez-Serrano v. Barr*,
981 F.3d 459 (6th Cir. 2020)........ 15, 17

*Immigration & Naturalization Serv. v. Chadha*,
462 U.S. 919 (1983) .......... 12, 13
*In re Geisser*,
554 F.2d 698 (5th Cir. 1977) .......... 18
*Little v. KPMG LLP*,
575 F.3d 533 (5th Cir. 2009) .......... 9
*Local No. 93, International Association of Firefighters v. City of Cleveland*,
478 U.S. 501 (1986) .......... 14
*Marino v. Ortiz*,
484 U.S. 301 (1988) (per curiam) .......... 4, 6
*Maryland v. King*,
567 U.S. 1301 (2012) (Roberts, C.J., in chambers) .......... 19
*Nken v. Holder*,
556 U.S. 418 (2009) .......... 7, 8, 15, 16
*Nuclear Regul. Comm'n v. Texas*,
605 U.S. 665 (2025) .......... 6
*Office of Pers. Mgmt. v. Am. Fed'n of Gov't Employees, AFL-CIO*,
473 U.S. 1301, (1985) .......... 5
*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
474 U.S. 34 (1985) .......... 6
*Pool v. City of Houston*,
87 F.4th 733 (5th Cir. 2023) .......... 12
*Saldano v. Roach*,
363 F.3d 545 (5th Cir. 2004) .......... 13
*SEC v. Randolph*,
736 F.2d 525 (9th Cir. 1984) .......... 18
*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 11
*Syngenta Crop Prot., Inc. v. Henson*,
537 U.S. 28 (2002) .......... 6
*Texas v. Biden*,
10 F.4th 538 (5th Cir. 2021) .......... 18
*Texas v. U.S.*,
40 F.4th 205 (5th Cir. 2022) .......... 8
*Thomas v. Bryant*,
919 F.3d 298 (5th Cir. 2019) .......... 15

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........ 19
*U.S. v. Allegheny-Ludlum Indus., Inc.*,
517 F.2d 826 (5th Cir. 1975) ........ 13
*United States v. Cannons Eng'g Corp.*,
899 F.2d 791st Cir. 1990) ........ 18
*United States v. Texas*,
173 F.4th 659 (5th Cir. 2026) (en banc) ........ 7, 10
*United States v. Texas*,
181 F.4th 548 (5th Cir. 2026), *reh'g denied*, No. 25-10898 (5th Cir. Sept. 8, 2026) ........ passim
*United States v. U.S. Steel Corp.*,
548 F.2d 1232 (5th Cir. 1977) ........ 17
*United States v. Windsor*,
570 U.S. 744 (2013) ........ 13
*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019) ........ 8
*Wyoming v. Oklahoma*,
502 U.S. 437 (1992) ........ 10
*Zimmerman v. City of Austin*,
881 F.3d 378 (5th Cir. 2018) ........ 9

**Statutes**

28 U.S.C.A. § 1651 ........ 6
5 U.S.C. § 553 ........ 14
8 U.S.C. § 1229a(c)(1)(A) ........ 14, 17

**Other Authorities**

*Efficient Case and Docket Management in Immigration Proceedings*, 89 Fed. Reg. 46,742 (May 29, 2024) ........ 2, 19
Matter of Castro-Tum, 27 I. & N. Dec. 271, 272 (A.G. 2018) ........ 17

## INTRODUCTION

Appellants are strangers from the judgment they have asked this Court to suspend. A nonparty denied intervention may appeal the intervention order but may not obtain review of the underlying judgment unless the denial is reversed. *United States v. Texas*, 181 F.4th 548, 561–62 (5th Cir. 2026); *Edwards v. City of Houston*, 78 F.3d 983, 992-93 (5th Cir. 1996). Accordingly, the Court's jurisdiction does not reach Appellants' stay request and is limited to the district court's denial of Appellants' intervention. No doubt wise to this, Appellants ask this Court, "to the extent necessary," to summarily reverse the district court's denial, immediately bestowing party status on them. The latter, extraordinary request departs from this Court's settled precedent that reserves summary reversal for when one party is indisputably correct as a matter of law. *Groendyke Transportation, Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969). And, in a rush to litigate the lower court's merits judgment, Appellants do not bother addressing the Rule 24(a) factors to explain why reversal of the lower court's denial is warranted.

While the Court should reject Appellants' stay request as a premature attempt to reach the district court's merits ruling, Appellants also fail to satisfy *Nken*'s standard for a stay pending appeal. Appellants are not injured by the district court's consent judgment. They are therefore unlikely to succeed on the merits and do not face irreparable harm in the absence of a stay. Meanwhile, suspending the consent judgment would harm Texas and the United States and disrupt the status quo by reviving a vacated regulation that both the Parties and the district court deemed unlawful.

## Background

In May 2024, the Department of Justice promulgated *Efficient Case and Docket Management in Immigration Proceedings*, 89 Fed. Reg. 46,742 (May 29, 2024) (the "Rule"). Among other things, the Rule authorized immigration judges and the Board of Immigration Appeals to administratively close removal proceedings under a totality-of-the-circumstances standard, including when no collateral petition, application, or proceeding was pending. *Id.* at 46,792; Add. 86–87, ECF No. 23-2 at 88-89.

In April 2025, the Acting Director of the Executive Office for Immigration Review issued Policy Memorandum 25-29, stating that EOIR could not defend the Rule in good faith. The memorandum did not vacate or suspend the Rule. Add. 87, ECF No. 23-2 at 89.

Texas filed this action on June 22, 2026. The complaint alleged that the Rule exceeded EOIR's statutory authority, violated the Administrative Procedure Act, and continued to impose fiscal, public-safety, and sovereign harms on Texas. Add. 1–43. Texas and the federal defendants jointly moved for entry of a consent judgment that same day. Add. 44–48, ECF No. 23-2 at 46–50.

The district court entered the Order and Final Judgment (the "Consent Judgment") after considering the joint motion, the complaint, and applicable law. Add. 49-50, ECF No. 23-2 at 51-52. The judgment declared the Rule contrary to law and in excess of statutory authority; declared that no statute authorizes immigration judges to indefinitely administratively close or suspend adjudication of a case; permanently enjoined enforcement of the Rule; permanently enjoined regulations

permitting administrative closure without reaching the merits absent an express statutory basis; vacated the Rule; and recorded the parties' waiver of appeal. *Id.*

On August 7, the Cities of Baltimore, Columbus, and New Haven and Centro Legal de la Raza, an immigrants' rights group and legal aid clinic, moved to intervene as defendants under Rule 24(a)(2) for the purpose of appealing the Consent Judgment. Add. 86–87, ECF No. 23-2 at 88–89. The district court denied intervention because no Proposed Intervenor had Article III standing to pursue that appeal, rendering intervention futile. Add. 88–94, ECF No. 23-2 at 90–96. It held that the Cities' tax theory depended on a series of uncertain adjudicatory, enforcement, employment, residence, and revenue consequences; that Baltimore's voluntary legal-services expenditures were self-inflicted; that the U-visa theory rested on speculative choices by multiple third parties; and that Centro Legal's increased-workload theory was foreclosed by en banc precedent. Add. 90–94, ECF No. 23-2 at 92–96.

After Appellants noticed an appeal, the district court denied their stay motion. It held that, as nonparties, they could not appeal or obtain a stay of the underlying judgment and that, in any event, they had not satisfied the *Nken* factors. Add. 95–96, ECF No. 23-2 at 97–98. Their present motion seeks a stay of the entire Consent Judgment and, "to the extent necessary," summary reversal of the intervention order (at 32).

## ARGUMENT

### I. A Stay of the District Court's Final Judgment Would Exceed this Court's Jurisdiction.

#### A. The instant appeal is limited to the intervention ruling.

Appellants recognize this Court's jurisdiction over the Consent Judgment is "merely potential" (at 17). Because they have not and cannot show that a stay is necessary to aid this Court's jurisdiction over the denial of Appellant's intervention—the one final order currently before the Court—that concession is dispositive.

"It is well-settled that one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards*, 78 F.3d at 993 (collecting authorities). But the only Appellants here "are would-be intervenors whose attempts to join the case . . . were unsuccessful." *Id.* at 993. And because they "were denied leave to intervene, and thus never obtained the status of party litigants in this suit," the Court must "dismiss their appeals, insofar as they seek review of the district court's final judgment . . . approving the Consent Decree." *Id.* at 994; *see also Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.").

Recently this Court confirmed these principles in a materially similar case. *See United States v. Texas*, 181 F.4th 548, 561–62 (5th Cir. 2026), *reh'g denied*, No. 25-10898 (5th Cir. Sept. 8, 2026). In *Texas*, non-parties unsuccessfully moved to intervene after Texas and the Department of Justice settled a challenge to a state

statute that was preempted by federal education law, which the district court finalized by entering a consent judgment. *Id.* at 551-52. The motions panel denied intervenors' request for a stay, *id.* at 553, and after upholding the denial of intervention, the Court dismissed intervenors' other claims for relief. The Court reasoned that it lacked "appellate jurisdiction" to consider anything extraneous to the denial of intervention, as non-parties could not "seek review of the district court's approval of the consent judgment." *Id.* at 561.

Appellants' nonparty status is fatal to their request for a stay of the Consent Judgment. A court of appeals' stay authority is not a freestanding power but limited to the order or judgment being appealed. *See Office of Pers. Mgmt. v. Am. Fed'n of Gov't Employees, AFL-CIO*, 473 U.S. 1301, 1306 (1985); *see also Texas*, 181 F.4th at 561 n.29 (noting inter alia that Fed. R. App. 8(a)(1) limits its authorization of a stay to "[a] party"). Because the denial of intervention is the only final order properly on appeal, the Court cannot stay the Consent Judgment without exceeding its jurisdiction.

True, courts may issue stays to protect or aid jurisdiction they already have. *See e.g.*, *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 316-17 (5th Cir. 2021) (characterizing the panel's stay authority as "necessary and appropriate in aid of our jurisdiction"). But even protective stays must be rooted in a "source of continuing jurisdiction…over [] actions… the [court] at one time had power to review." *Clinton v. Goldsmith*, 526 U.S. 529, 536 (1999).

This is likewise true of stays issued under the auspices of the All Writs Act, "a residual source of authority to issue writs that are not otherwise covered by statute"

but only "in aid of [the courts'] respective jurisdictions." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) (quoting 28 U.S.C.A. § 1651). The Act "is not an independent grant of appellate jurisdiction" and "confines the authority to the issuance of process in aid of the issuing court's jurisdiction" without "enlarg[ing] that jurisdiction." *Clinton* 526 U.S. at 534-35 (1999) (quotation omitted); *see also Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (same). Where an action is "beyond the [court's] jurisdiction to review," it is "hence beyond the aid of the All Writs Act in reviewing it." *Clinton*, 526 U.S. at 535. Accordingly, Appellant's invocation of the Act is mistaken since the Court lacks an original basis for jurisdiction over the Consent Judgment.

Appellants' own alternative request underscores the point. They ask that, "to the extent necessary," the Court summarily reverse the denial of intervention so that it may reach the merits of the Consent Judgment (at 17). That fallback implicitly concedes that only by reversing the denial of intervention can Appellants "properly become parties" and unlock appellate review of the judgment. *Marino*, 484 U.S. at 304. However, unless and until that occurs, they remain nonparties who "may not obtain appellate review of any final order of the district court in the underlying proceeding." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 679 (2025).

### B. Summary reversal is unavailable.

Nor should this Court indulge Appellant's alternative proposal to summarily reverse the district court's denial of their motion to intervene. Summary disposition is reserved for cases in which one party's position is "clearly right as a matter of law" and "there can be no substantial question as to the outcome." *Groendyke*

*Transportation, Inc.* 406 F.2d at 1162 . Here, the district court followed two exceptionally recent precedential decisions, *United States v. Texas*, 181 F.4th at 553– 54, which requires a threshold futility inquiry for proposed defense intervenors, and the en banc decision in *United States v. Texas*, 173 F.4th 659, 665–69 (5th Cir. 2026) (en banc), which forecloses Centro Legal's theory the change in regulation confers standing due to an increased workload. That is the opposite of clear error.

Moreover, the district court denied intervention at the threshold and therefore did not decide the remaining Rule 24(a)(2) requirements. Add. 88–94, ECF No. 23-2 at 90–96. Standing alone does not establish entitlement to intervene. To prove they had a right to join the litigation, Appellants must establish timeliness, a direct and legally protectable interest, practical impairment, and inadequate representation. Their stay motion simply skips these factors, then asks this Court to grant them party status without any showing they are entitled to it.

Moreover, if the Court disagrees with the district court's standing analysis, then it should remand for adjudication of the Rule 24 factors, rather than summarily confer party status, reach the Consent Judgment's merits, and stay it in the same motion proceeding.

## II. The Nken Factors do not Support a Stay.

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal citation omitted). This Court considers four factors in deciding whether to enter a stay pending appeal: "(1) whether the applicant has made a strong showing of likelihood to succeed on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether

issuance of a stay will substantially injure other interested parties; and (4) where the public interest lies." *Texas v. U.S.*, 40 F.4th 205, 215 (5th Cir. 2022). The third and fourth factors ordinarily merge where, as here, the stay would issue against a governmental party. *Nken*, 556 U.S. at 435. No factor favors Appellants.

### A. Appellants are unlikely to succeed on the merits.

#### 1. Appellants lack standing to challenge the Consent Judgment.

Appellants may prosecute an appeal only if each independently satisfies Article III. *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663–64 (2019); *Diamond v. Charles*, 476 U.S. 54, 68–71 (1986). That requires an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). A threatened injury must be "certainly impending," and standing cannot rest "on speculation about the decisions of independent actors." *Id.* at 409, 414. The district court correctly applied those principles and found every asserted injury wanting. Add. 88–94, ECF No. 23-2 at 90–96.

Appellants' principal contention (at 12, 19–20, 22) is that the Cities' standing "mirror[s]" Texas's: if Texas could challenge the Rule, the Cities may challenge its vacatur. But the two theories are not symmetric. Texas challenged a binding regulation that directly governed EOIR adjudicators and required them, in specified circumstances, to close pending cases. Texas also presented evidence showing both that the Rule led to an increased number of unlawfully present immigrants within the State and that the State incurred significant welfare and services expenses due to unlawful immigrants. The Cities allege that they reap fiscal and operational benefits

from illegal immigrants resident in their municipal limits. However, their asserted injuries arise, if at all, only at the end of a sequence the Consent Judgment does not direct. While the district court terminated the Rule's closure authority, it neither orders nor precipitates a push to recalendar currently closed removal cases. Rather, the reopening of any closed case rests on the decisions of independent actors. DHS must move to recalendar a closed case, an immigration judge must grant the motion and find the resident removable, DHS must choose to execute the order, and the resident must meanwhile have remained in the City earning taxable income. An injury whose "existence depends on the decisions of third parties not before the court" is "too conjectural or hypothetical" for Article III. *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009); *Zimmerman v. City of Austin*, 881 F.3d 378, 390 (5th Cir. 2018) (rejecting standing where party's injury was "speculative and depends in large part on the action of third-part[ies].""); *Computer & Commc'ns Indus. Ass'n v. Paxton*, 184 F.4th 420, 433 (5th Cir. 2026) ("an injury cannot be the result of the independent action of some third party not before the court"). Unlike Texas, the Cities cannot trace the fiscal and operational harms they anticipate to the order they seek to challenge.

The Cities' cases do not support their fiscal injury theory. *Department of Commerce v. New York* rested on record evidence that third parties would in fact react as predicted. 588 U.S. 752, 767–68 (2019). The Cities have offered nothing comparable, and three months after judgment they identify no resident whose case has even been recalendared. *Wyoming v. Oklahoma* recognized standing where a challenged statute directly displaced the coal sales on which Wyoming levied a tax.

502 U.S. 437, 448 (1992). By contrast, "loss of general tax revenues as an indirect result of federal policy is not a cognizable injury in fact." *El Paso County v. Trump*, 982 F.3d 332, 339 (5th Cir. 2020). Further, the Cities allege no comparable diversion of an identified revenue stream, only a wish to keep the taxpayers they have.

The Cities' law-enforcement theory (at 20–22) is especially attenuated. The judgment leaves untouched U visa eligibility, the Cities' certification authority, USCIS's adjudication of petitions, and DHS's enforcement discretion. Appellants concede that certification "remains formally available" (at 21). Their injury is instead that unidentified victims "will stop coming forward or will be deported" (at 21), hazarding a prediction about how third parties will respond to how other third parties will exercise discretion. Appellants did not offer any evidence to the district court or on appeal to substantiate that prediction. Accordingly, the Cities' putative law-enforcement injury amounts to a "speculative chain of possibilities." *Clapper*, 568 U.S. at 414.

Separately, Centro Legal's theory is foreclosed by *United States v. Texas*, 173 F.4th 659 (5th Cir. 2026) (en banc) The Court rejected the standing of a legal-services organization to challenge a change in law that merely requires it "to understand the legal change, to adjust resources in response, or to increase the degree or scope of legal representation for its current or prospective clients who may be adversely affected." *Id.* at 666–67. Centro Legal answers (at 22–23) that the en banc case involved an organization with a "broad mandate," whereas its own obligations run to "identified clients in identified proceedings." But the holding expressly encompasses representation of "current" clients, *id.*, and the cost of doing

more of the work an organization already performs for existing clients is the paradigm of a self-imposed, resource-allocation injury. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394–95 (2024). How Centro Legal chooses to fund its caseload does not change the analysis.

Further, Centro Legal's theory shares the Cities' defect. The judgment recalendars nothing, and Centro Legal identifies no client whose case has been returned to an active docket because of it.

Centro Legal's remaining theory fares no better. Its reliance on the Rule in dismissing its challenge to the 2020 Rule (at 23) is not an injury traceable to this judgment, which neither adjudicated nor reinstated the 2020 Rule. *Clarke v. CFTC* involved regulated parties whose own conduct was exposed to enforcement when a no-action letter was withdrawn, 74 F.4th 627, 634–37 (5th Cir. 2023), but Centro Legal does not claim a similarly direct regulatory injury. And its lost opportunity to comment on a rescission (at 23) asserts a bare "[d]eprivation of a procedural right without some concrete interest that is affected by the deprivation." By itself that "is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

Finally, none of these injuries would be redressed by reversal. Reviving the Rule would not prevent DHS from moving to reopen closed cases or immigration judges from granting those motions. What Appellants seek is not relief from this judgment but insulation from enforcement policies that no ruling in this appeal can alter. Because no Appellant has standing, none is likely to succeed on the merits.

**2. The district court's Consent Judgment resolved a live Article III controversy and did not evade the APA's rulemaking requirements.**

Citing *Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023), Appellants argue (at 23-25) that this case was a "faux" dispute that lacked the requisite adversity to satisfy Article III's jurisdictional prerequisites. But Appellants misread *Pool*. There this Court held that the district court lacked jurisdiction to enter a declaratory judgment holding voter-registration provisions in Houston's City Charter unconstitutional because, "all parties have agreed from the beginning" that the challenged provisions were "unconstitutional" and "[t]he City also agreed that it 'would and could not enforce the provisions.'" *Pool*, 87 F.4th at 734 (citation omitted). Moreover, the appeal in *Pool* concerned only "the wording" of a declaratory judgment addressing provisions that the City had already disclaimed any ability or intention to enforce. *Id.* at 733–34. On those facts, further judicial relief would not alter the City's conduct, prevent any threatened enforcement, or otherwise change the parties' legal relationship; it would merely memorialize a legal conclusion that both sides already accepted.

Here, while DOJ agreed that the Final Rule was unlawful, the Rule remained an effective regulation up to the date the district court vacated it. DOJ did not unilaterally relieve EOIR adjudicators of their obligation to follow the Rule or otherwise attempt to suspend the Rule's operation. Concession to an opposing party's legal theories and claims for relief does not defeat adversity when the Government continues to implement challenged laws or agency action. *See Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 939-40 (1983) (finding

the case presented a "live case or controversy" even though INS agreed with petitioner that the challenged provision was unconstitutional); *United States v. Windsor*, 570 U.S. 744, 756–59 (2013) (finding the United States had standing despite its refusal to defend DOMA while it continued to abide by the Act). Because DOJ maintained live regulations that it promulgated and that caused injury to Texas, the Parties were materially adverse at the time suit was filed.

Contra Appellants, there is nothing untoward about litigation where "[s]imultaneously with the filing of the complaint, the parties announced . . . that a tentative nationwide settlement had been reached," "multilaterally reduced their agreement to the form of two extensive written consent decrees," and the district court "signed and entered the documents later that same day." *U.S. v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 834 (5th Cir. 1975). And, in *Texas*, this Court denied intervention and upheld a consent decree earlier this year. *United State v. Texas*, 181 F.4th at 561-62; *see also Saldano v. Roach*, 363 F.3d 545, 553 (5th Cir. 2004) (denying intervention where nonparties argued that "the Attorney General's representation of [Texas]' interest is inadequate because the Attorney General aligned himself with [the opposing party] and joined [him] in urging the district court to vacate [the opposing party's] sentence"). Appellants' "argument rests on the fact that [the Parties] take the same position on the constitutionality of" the challenged Rule, "[b]ut it would be a curious result if… a person could be denied access to the courts because the Attorney General of the United States agreed with the legal arguments asserted by the individual." *Chadha*, 462 U.S. at 939.

Separately, Appellants contend the Consent Judgment violates the Administrative Procedure Act's notice-and-comment requirements, 5 U.S.C. § 553. Appellants' position is extreme. By arguing that § 553 applies to an agency's settlement power, Appellants would deny federal agencies the freedom to ever settle challenges mounted against agency action subject to the APA's rulemaking requirements. No court has adopted that totalistic conclusion.

On the contrary, a consent judgment is valid as long as it remains within the scope of a court's jurisdiction and does not compel unlawful conduct. *Local No. 93, International Association of Firefighters v. City of Cleveland*, 478 U.S. 501, 525–26 (1986). Since the authority of a court to review and set aside unlawful agency action is well established, *see Data Marketing Partnership, LP v. U.S. Department of Labor*, 45 F.4th 846, 859 (5th Cir. 2022), the Consent Judgment satisfies those limits. Unlike the cases Appellants cite (at 26-27 (citing inter alia *Conservation Nw. v. Sherman,* 715 F.3d 1181, 1185 (9th Cir. 2013))), the Judgment did not amend the Rule or substitute new regulations. Instead, it simply resolved Texas's APA claims.

**3. The statutory merits are at least substantially disputed.**

Appellants' statutory argument likewise falls well short of a strong showing. The INA directs that, "[a]t the conclusion of the proceeding," the immigration judge "shall decide whether an alien is removable." 8 U.S.C. § 1229a(c)(1)(A). Texas alleged that the 2024 Rule transformed administrative closure from limited docket management into indefinite non-adjudication, allowing cases to remain closed for years or decades with no identified timetable or collateral event likely to resolve

them. Add. 1–43, ECF No. 23-2 at 3–45. The district court's judgment accepted that legal conclusion. Add. 49–50, ECF No. 23-2 at 51–52.

The decisions Appellants cite primarily construed earlier versions of EOIR's regulations (at 28-31)—not whether Congress authorized the materially broader 2024 Rule. And the circuit authority is divided even as to those prior regulations. *Compare Hernandez-Serrano v. Barr*, 981 F.3d 459, 463–66 (6th Cir. 2020), *with Arcos Sanchez v. Attorney General*, 997 F.3d 113, 121–23 (3d Cir. 2021). A general grant of supervisory and rulemaking authority in 8 U.S.C. § 1103(g) does not answer whether indefinite suspension is consistent with Congress's specific removal-adjudication framework. The parties' substantial disagreement confirms that this is no candidate for summary relief.

Appellants must make a "strong showing" that the district court's declaration was wrong. *Nken*, 556 U.S. at 434. They have shown at most that the statutory question is one on which some courts have differed—and one on which the agency charged with administering the Act, having studied the matter, concluded that it could not defend the Rule in good faith. Add. 104, ECF No. 23-2 at 106. That is no basis for a stay.

### B. Appellants do not face irreparable harm.

Appellants must show that they "will be irreparably harmed absent a stay." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019). A mere possibility of harm is not enough; irreparable injury must be likely absent relief. *Nken*, 556 U.S. at 434–35. The asserted harm must also be concrete and non-speculative. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

Appellants make no independent showing on this factor and instead reiterate (at 31) their standing allegations. The claimed harms do not constitute irreparable harm for the same reason that they do not confer standing. Nonrecoverable financial loss can sometimes qualify as irreparable, but only if the loss is likely and imminent. *See Nken*, 556 U.S. at 434–35. "Nonrecoverable" does not cure speculation.

In the nearly three months since judgment, no City quantifies tax revenue likely to be lost during the appellate period or identifies a taxpayer likely to be removed. No City identifies a pending prosecution or U-visa cooperation problem caused by the judgment. Centro Legal identifies no reopened case, imminent deadline, or expenditure compelled during the appeal. The motion relies instead on conditional predictions extending through multiple discretionary decisions. That is insufficient for extraordinary relief.

The timing further undercuts the asserted emergency. The Consent Judgment was entered June 22. Appellants did not seek intervention until August 7 and did not seek a district-court stay until after intervention was denied. Add. 49–50, ECF No. 23-2 at 51–52; Add. 86–96, ECF No. 23-2 at 88–98. Although they acted within the appeal period, the absence of any identified concrete harm during those weeks reinforces that the claimed emergency remains prospective and unsubstantiated.

### C. Texas would be harmed by a stay and the public interest favors finality.

Appellants assert that a stay would merely preserve the "status quo" and that Texas "alleges no imminent substantial injury." Both premises are mistaken.

1. A stay would not merely pause this litigation. It would suspend the relief the actual parties obtained and revive a regulation the district court declared unlawful. Add. 49-50, ECF No. 23-2 at 51–52. Texas showed—and the district court accepted in entering judgment—that the Final Rule prolongs the presence of removable aliens by suspending adjudication of their cases indefinitely, thereby increasing the State's healthcare, education, and law-enforcement expenditures. Add. 25–27, ECF No. 23-2 at 27–29. The Consent Judgment redressed those injuries by eliminating the Rule, Add. 49–50, ECF No. 23-2 at 51–52, and a stay would reinstate them.

Nor would that harm be temporary. "[A]lthough described as a temporary suspension, administrative closure is effectively permanent in most instances." *Matter of Castro-Tum*, 27 I. & N. Dec. 271, 272 (A.G. 2018); *see* Hernandez-Serrano, 981 F.3d at 463. Closures entered during a stay may well outlast this appeal, whatever its outcome. Appellants' suggestion (at 32) that Texas suffers "no imminent" injury from a practice "used for decades" thus inverts the problem: the injury lies precisely in the indefinite suspension of adjudications that Congress directed immigration judges to complete. *See* 8 U.S.C. § 1229a(c)(1)(A).

"[I]nterventions after judgment have a strong tendency to prejudice existing parties to the litigation" and "interfere substantially with the orderly process of the court," *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977), which is why they are "ordinarily looked upon with a jaundiced eye," *id.* (quoting *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1072 (5th Cir. 1970)). Texas and the United States resolved this action by consent and waived any appeal. A stay obtained by nonparties would unsettle that resolution and compel DOJ to administer a

regulation it has concluded it cannot defend in good faith. Add. 104. Would-be intervenors "must accept the proceedings as [found]." *In re Geisser*, 554 F.2d 698, 705 n.6 (5th Cir. 1977).

2. The public interest points the same way. "[T]here is generally no public interest in the perpetuation of unlawful agency action." *Texas v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Rather, "the public interest is in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* at 559 (cleaned up). Under the expansive approach to closure that the Rule codified, administratively closed cases grew to almost 392,000 between January 2021 and January 2025, while EOIR's backlog more than doubled, Add. 101, ECF No. 23-2 at 103. EOIR itself has dubbed removal closure "a de facto amnesty program," Add. 102, ECF No. 23-2 at 104. The public interest lies in completing removal proceedings as Congress directed, not in reviving the mechanism for suspending them.

The public interest also favors the finality of a judgment entered by consent of two governmental litigants. "[I]t is the policy of the law to encourage settlements," particularly where "government actor[s] committed to the protection of the public interest ha[ve] pulled the laboring oar in constructing the proposed settlement." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) (citations omitted); *see also SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).

Appellants' invocation of the "status quo" (at 12, 32) inverts the inquiry. The Final Rule has not been in effect since June 22, 2026; for nearly three months,

immigration judges and the Board have adjudicated cases without it. The settled preference for maintaining the status quo therefore favors preserving the judgment, not disturbing it. *See Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016). Nor was the Final Rule an undifferentiated continuation of "decades" of practice. It rescinded a 2020 regulation that had largely eliminated administrative closure and expanded closure beyond even its prior scope, mandating closure on unopposed motions, authorizing it over DHS's objection, and permitting it when no application is pending elsewhere. *See* 89 Fed. Reg. at 46,787, 46,792.

*E.T. v. Paxton* and *Trump v. CASA* (at 32) do not help Appellants. In each, a sovereign invoked the public interest in enforcing its own enactments. *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021); *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). That principle protects a government's interest in effectuating its own policies, *see Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers), but it does not entitle strangers to the litigation to insist that an agency keep administering a regulation the agency has disavowed.

Finally, the Cities' generalized interest in crime-victim cooperation does not show that this regulatory regime is necessary to protect the U visa program. Certification remains available, and no concrete public-safety loss has been identified. The speculative benefits Appellants predict cannot outweigh the public's interest in finality and in agencies' adherence to the laws that govern them.

## CONCLUSION

The Court should deny Appellants' motion for a stay pending appeal, deny any request for a partial stay, and deny summary reversal.

Date: September 21, 2026

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

Respectfully submitted.

*/s/ Kyle Tebo*
KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
LEGAL STRATEGY DIVISION
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Kyle.Tebo@oag.texas.gov

*COUNSEL FOR TEXAS*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5176 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ *Kyle S. Tebo*
Kyle S. Tebo

## Certificate of Service

On September 8, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ *Kyle S. Tebo*
Kyle S. Tebo